UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN MARIN,<br><br>*Plaintiff*,<br><br>v.<br><br>DANIEL P. DRISCOLL, Secretary of the Army,[1]<br><br>*Defendant*. | Civil Action No. 24-1508 (SLS)<br><br>Judge Sparkle L. Sooknanan |

# MEMORANDUM OPINION

Jonathan Marin is a former Army mechanic who was court-martialed for sexually assaulting a female soldier. Mr. Marin submitted Freedom of Information Act requests to the Army seeking disciplinary and other records related to his accuser and materials about an investigation of the unit in which they both served. The Army issued *Glomar* responses, refusing to confirm or deny the existence of those records. Mr. Marin brought this lawsuit to challenge the validity of the Army's responses. The Secretary of the Army now moves for summary judgment asserting that the responses were properly issued. The Court grants the Secretary's motion.

## BACKGROUND

### A.   Statutory Background

The Freedom of Information Act (FOIA) "implement[s] a general philosophy of full agency disclosure." *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 754 (1989) (cleaned up). The statute "requires every federal agency, upon request, to make 'promptly

---

[1] The current Secretary is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)). Agencies must construe FOIA requests liberally and can only withhold or redact documents if the information requested "falls within one of nine statutory exemptions." *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health* (*PETA*), 745 F.3d 535, 540 (D.C. Cir. 2014) (citing 5 U.S.C. § 552(b)(1)–(9)). The agency bears the burden of establishing that an exemption applies and ordinarily "must disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Id.* (cleaned up).

In certain cases, an agency may determine that "merely acknowledging the existence of responsive records could itself cause harm cognizable under a FOIA exception." *PETA*, 745 F.3d at 540 (cleaned up). In such instances, the agency can issue a *Glomar* response that refuses to "confirm or deny its possession of responsive documents." *Id.* A *Glomar* response "is proper if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).[2]

**B.    Factual Background**

On December 7, 2023, Mr. Marin submitted FOIA requests to the Army requesting: (1) "[a] copy of an Army Regulation (AR) 15-6 Investigation" where "the subject of the investigation contains the terms 'Apache Troop' and/or" the names of four other individuals associated with the unit; (2) "[a]ny and all email communications to include any email

---

[2] "The *Glomar* response takes its name from the CIA's refusal to confirm or deny the existence of records about the *Hughes Glomar Explorer,* a ship used in a classified CIA project to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts." *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health* (*PETA*), 745 F.3d 535, 540 (D.C. Cir. 2014) (cleaned up).

attachments" sent by the investigator concerning "Apache Troop" and/or the four named individuals; and (3) "[a]ny and all administrative or disciplinary records" relating to one of the four named individuals, E.L.,[3] to include records "relating to the use of cocaine, and any records reflecting an administrative discharge . . . due to misconduct by consuming cocaine." Compl., Ex. A (FOIA Req.), ECF No. 5-1 at 1.

The Army acknowledged Mr. Marin's requests. *See* Norris Decl. ¶¶ 4–5, ECF No. 17-4; Compl., Ex. B, ECF No. 5-1 at 2. Then in February 2024, it referred the requests to the Fort Carson Military Justice Division and the U.S. Army Central Command. Norris Decl. ¶ 5; Compl., Ex. C, ECF No. 5-1 at 3. On March 24, 2024, Mr. Marin sent follow-up requests for expedition, asserting that he had "an urgent and compelling need" for expedited production because he was "currently appealing his court-martial case" and the records requested were "material to [his] defense." Compl., Ex. D, ECF No. 5-1 at 4–7.

On October 7, 2024, Army Human Resources Command (responding on behalf of the Fort Carson FOIA Office) responded to Mr. Marin's request for records regarding E.L. that "[a]s a matter of policy and to protect the privacy interests of its personnel, the Department of the Army does not confirm or deny the existence of misconduct records that would be responsive to your request." Gustafson Decl. at 4, ECF No. 17-5. It further noted that "third party misconduct records, when any do exist, are exempt from mandatory release under the Privacy Act, and FOIA Exemption 6." *Id.* On November 14, 2024, Army Central Command sent a functionally identical response regarding the AR 15-6 investigation, stating that the Army would not "confirm or deny the existence of investigation records or email communications that would be responsive to [the] request" and noted that "third party investigation records, when any do exist" are similarly exempt

---

[3] E.L. is the soldier who accused Mr. Marin of sexual assault.

3

from mandatory release. Credle Decl. ¶ 4, ECF No. 17-6. Mr. Marin appealed both decisions, but his appeals were denied. *See* Def. Exs. D, E, ECF 17-7, 17-8.

### C.  Procedural Background

Mr. Marin filed this lawsuit on April 25, 2024, asking the Court to order the Defendant to produce the requested records. ECF No. 1. He has amended his Complaint twice. *See* ECF No. 5, ECF No. 7-1. On March 11, 2025, the Secretary moved for summary judgment. ECF No. 17. On April 25, 2025, Mr. Marin moved to amend his Complaint. ECF No. 21. Both motions are fully briefed and ripe for review. *See* Pl.'s Opp'n Mot. Summ. J (MSJ Opp'n), ECF No. 18; Def.'s Reply Supp. Mot. Summ. J, ECF No. 22; Pl.'s Surreply Mot. Summ. J, ECF No. 27; Def.'s Opp'n Mot. Amend Compl., ECF No. 20; Pl.'s Reply Supp. Mot. Amend Compl., ECF No. 24.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 56 requires a court to grant summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[.]'" *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (quoting Fed. R. Civ. P. 56(a)). In a FOIA suit, an agency is entitled to summary judgment if it demonstrates that "no material facts are in dispute" and that all information subject to a request has either "been produced or is wholly exempt from the Act's inspection requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (cleaned up).

Courts may uphold a *Glomar* response on summary judgment where an agency provides affidavits that adequately explain "the basis for the response." *PETA*, 745 F.3d at 540. For the affidavits to be credited, they must contain "'reasonable specificity of detail rather than merely conclusory statements' and cannot be 'called into question by contradictory evidence in the record.'" *Id.* (quoting *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency,* 678 F.3d 926, 931 (D.C. Cir.

2012)). When a *Glomar* response is justified, "the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *PETA*, 745 F.3d at 540.

## DISCUSSION

The Secretary argues that the Army properly issued *Glomar* responses to Mr. Marin's FOIA requests because acknowledging the existence of responsive records, if they do exist, would itself reveal information that would be exempt under FOIA Exemption 6. The Secretary further urges denial of Mr. Marin's request to amend his Complaint. The Court agrees on both counts.

### A.    Summary Judgment

FOIA's Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). This allows an agency "to protect the privacy of individuals identified in certain agency records," *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011), "by exempting "disclosures that would constitute an invasion of privacy," *Reps. Comm. for Freedom of Press*, 489 U.S. at 756 (cleaned up). A *Glomar* response is properly supported by Exemption 6 where acknowledging the existence or nonexistence of responsive documents in and of itself "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see also Wolf*, 473 F.3d at 374.

A court reviewing whether Exemption 6 was properly applied must answer two questions. First, whether the records sought are "personnel," "medical," or "similar files." 5 U.S.C. § 552(b)(6). The term "similar files" includes "[g]overnment records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). "The information in the file need not be intimate for the file to satisfy the standard, and the

threshold for determining whether information applies to a particular individual is minimal." *Shapiro v. Dep't of Just.*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014) (cleaned up).

Second, a court must "determine whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (cleaned up). "If a substantial privacy interest is at stake, then the court must 'balance' the individual's right of privacy against the public interest in disclosure." *Id.* (quoting *Horowitz v. Peace Corps.*, 428 F.3d 271, 278 (D.C. Cir. 2005) (citation omitted)). This public interest analysis requires a court to assess "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994)). Thus, "[i]nformation that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose[.]" *Beck v. Dep't of Just.*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *Rep.'s Comm. for Freedom of Press*, 489 U.S. at 773.). The requester bears the burden of articulating a public interest to be advanced by the requested disclosure. *See Nat'l Archives and Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004). If they cannot demonstrate that the interest is "significant" and that the information requested is "likely to advance that interest," then the "invasion of privacy is unwarranted." *Id.*

Here, the Army properly relied on Exemption 6 when issuing *Glomar* responses to Mr. Marin's FOIA requests.

        **1.**    **Personnel or Similar Files**

First, both sets of requested records, if they exist, meet the threshold inquiry of being "personnel" or "similar files." This is obviously true of E.L.'s "administrative or disciplinary

records." FOIA Req. at 1. And it is also true of the AR 15-6 investigation records and associated emails, which according to Mr. Marin's request, relate to four specifically named individuals, one of whom is E.L. As the Secretary's declarant noted, "[a]n AR 15-6 investigation identifying specific individuals who may or [may] not have committed misconduct," ECF No. 17-6 ¶ 7, certainly falls within the "broad" meaning of "similar files" subject to FOIA Exemption 6, *Wash. Post Co.*, 456 U.S. at 600.

Mr. Marin resists the conclusion that the AR 15-6 investigation records are covered by Exemption 6, arguing that they are not "personnel, medical, or similar files." MSJ Opp'n at 4–17. He asserts that even though he listed the names of four specific individuals related to the investigation, he "did not anywhere request personnel records" for those individuals. *Id.* at 5. Rather, he was just providing those names as "additional search terms . . . to narrow the search" for the correct investigation of "Apache Troop." *Id.* at 10.

The Court is not convinced. Mr. Marin named those individuals because he believes they were part of and perhaps even primary targets of the AR 15-6 investigation. After all, if the investigation records had nothing to do with those individuals, then their names would have little value as narrowing "search terms." Mr. Marin's briefing confirms this. The first enclosure to Mr. Marin's opposition is a ten-page memo he drafted summarizing evidence he is aware of that "reasonably shows an AR 15-6 investigation was conducted" concerning misconduct by "Officers, NCOs, and junior enlisted soldiers in Apache Troop" that "led to the lack of good order and discipline." Enclosure 1 at 1, ECF 18-1. That memo discusses all four individuals named in his FOIA requests and makes clear that Mr. Marin believes the AR 15-6 records would reveal that all four—and potentially many other individuals in Apache Troop—had engaged in misconduct. *Id.* at 1–10. This is sufficient to establish that the investigatory records apply to specific individuals

and thus satisfy the minimal standard for being potentially exempt from disclosure under FOIA Exemption 6. *Shapiro*, 34 F. Supp. 3d at 94.

### 2. Privacy Interest

The next question is whether disclosing the existence of the requested records would compromise substantial privacy interests held by the individuals to whom those records apply. The Court agrees with the Secretary that it would.

The D.C. Circuit has consistently held that individuals implicated in "investigatory files," "complaints," or "disciplinary records" that are the subject of FOIA requests have a "substantial interest in nondisclosure" of those records. *See PETA*, 745 F.3d at 543 (collecting cases). That is certainly true here where Mr. Marin's requests indicate that he is seeking records showing that E.L. and the other named individuals engaged in drug use or other forms of misconduct. As the supporting declarations provided by the Secretary explain, "individuals clearly have a substantial privacy interest in records that might reveal whether an individual was investigated for misconduct or disciplined, especially as it relates to drug use. This information can be embarrassing or stigmatizing, resulting in negative and unwanted attention, and invite harassment." Gustafson Decl. ¶ 7; *see also* Credle Decl. ¶ 7. Indeed, the Secretary's declarations supporting both *Glomar* responses explain that it is the Department of Defense's policy to "protect the privacy of individuals to the fullest extent possible when releasing information under the FOIA." Gustafson Decl. ¶ 6; Credle Decl. ¶ 5. This policy mandates that "when requests for investigative material are processed under FOIA involving a third party, the Army is prohibited from releasing 'information revealing the details of the accusation (whether substantiated or not),' to include 'punishment or administrative actions.'" Gustafson Decl. ¶ 6; Credle Decl. ¶ 5.

The Secretary's position is intuitive and well supported by case law. *See, e.g.*, *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984) ("[I]ndividuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."); *Schrecker v. United States Dep't of Just.*, 349 F.3d 657, 666 (D.C. Cir. 2003) ("We have long recognized . . . that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation. Therefore, persons involved in law enforcement investigations—witnesses, informants, and the investigating agents—have a substantial interest in seeing that their participation remains secret." (cleaned up)); *Mikhashov v. Dep't of Def.*, No. 22-cv-3485, 2024 WL 4332601, at *16 (D.D.C. Sept. 26, 2024) (collecting cases finding that information related to internal investigations implicates privacy interests that are cognizable under Exemption 6). The Court thus concludes that disclosing the existence of any records responsive to Mr. Marin's requests would intrude on a substantial privacy interest.

In urging otherwise, Mr. Marin argues that military servicemembers enjoy "no [] presumption [of] individual personal privacy to warrant Exemption 6," relying on *Solorio v. United States*, 483 U.S. 435 (1987). MSJ Opp'n at 1, 37. He cites *Solorio* for the proposition that "persons in military service are not full-citizens within the meaning of the 14th Amendment, but are more akin to the status of 'Free Blacks' discussed by Chief Justice Taney" in *Dred Scott v. Sandford*, 60 U.S. 393 (1857). MSJ Opp'n at 37. He then summarizes *Dred Scott*'s abominable conclusions and argues that servicemembers were never intended to be included as citizens under the Constitution and thus "do not enjoy fundamental Constitutional rights or protections such as freedom of speech, nor the right to a grand jury . . . , [or] Sixth Amendment right[s.]" *Id.*

This argument is frivolous and offensive to those who serve our country. It will come as no surprise that *Solorio* says no such thing. It instead concludes that a servicemember may be tried

9

by court martial for crimes committed against civilians so long as the servicemember "was a member of the Armed Services at the time of the offense charged." 483 U.S. at 451.

At bottom, Mr. Marin does nothing to counter the well-established proposition that "enlisted military personnel . . . like any individuals, have a recognized privacy interest in avoiding disclosure of personal information." *Schwaner v. Dep't of the Army*, 696 F. Supp. 2d 77, 82 (D.D.C. 2010) (collecting cases finding that military and other federal agency personnel "have a recognized privacy interest in avoiding disclosure of personal information").

### 3. Public Interest in Disclosure

Having found that there are substantial privacy interests at stake, the burden shifts to Mr. Marin to demonstrate that disclosure of the records he requests is "likely to advance" a "significant" public interest that warrants invasion of those interests. *See Nat'l Archives*, 541 U.S. at 172. Mr. Marin does not carry this burden.

Mr. Marin's initial requests identified no public interest supporting disclosure of the records he seeks. It noted merely that he requested the materials "for personal use, not commercial and all information will be used for legal purposes." FOIA Req. at 1. His follow-up requests for expedited processing identified no additional public interest justifications beyond the "legal purposes" Mr. Marin had previously referenced. FOIA Req. at 4, 6 (explaining that the records "are material to [his] defense . . . in a military criminal proceeding," that he "is currently appealing his court-martial case," and that "if he does not receive the requested records he is a[t] imminent risk of forever losing a due process right"). Furthering Mr. Marin's ability to challenge his individual court-martial, however, is not a cognizable "public interest" under FOIA. *See Willis v. U.S. Dep't of Just.*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008) ("[I]t is well established that an individual's personal interest in challenging his criminal conviction is not a public interest under

FOIA because it 'reveals little or nothing about an agency's own conduct.'" (quoting *Reps. Comm. for Freedom of Press*, 489 U.S. at 773)).

In his summary judgment briefing, Mr. Marin makes the additional argument that disclosing the requested records will reveal government misconduct that the public should know about. MSJ Opp'n at 27–29. Specifically, he asserts that the requested records will "shed light" on the "toxic leadership performance" in Apache Troop—the "first female-integrated combat-arms Cavalry Troop deployed to a 'combat zone'"; and on "a pattern of prosecutorial misconduct by U.S. Army judge advocate officers." *Id*. The Court finds this argument unpersuasive.

As an initial matter, the Parties dispute whether there is an exception to FOIA Exemption 6 that requires the disclosure of records that may shed light on government misconduct. *See* MSJ Opp'n at 32–33; Def.'s Reply at 7–8. But either way, the requested records do not meet that criterion. Courts in this Circuit have applied a "so-called government misconduct exception" in the context of FOIA Exemption 5, which exempts records covered by privilege. *See Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urb. Dev.*, 19 F. Supp. 3d 1, 13–14 (D.D.C. 2013) (cleaned up) (collecting cases). If such an exception were to apply here, it would likely be informed by the contours of the misconduct exception to Exemption 5. And that exception is construed "narrowly" to apply to misconduct that is "severe enough to qualify as nefarious or extreme government wrongdoing." *Id.* at 14. Misconduct by "high-level officer[s]" whose actions are of greater public interest is more likely to trigger disclosure, *see Stern*, 737 F.2d at 94, than "low-level government employees [who] have a heightened privacy interest," *Insider, Inc. v. U.S. Gen. Servs. Admin.*, 635 F. Supp. 3d 1, 4 (D.D.C. 2022).

Here, there is likely some level of public interest in the alleged misconduct that Mr. Marin seeks to "shed light" on—*i.e.*, the "toxic leadership performance" in Apache Troop; the efforts, or

11

lack thereof, by "Army leadership" to "investigate[] and correct[] issues" flowing from those leadership failures; and "the continuing prosecutorial misconduct of military judge advocates at Fort Carson." MSJ Opp'n at 29. But Mr. Marin offers little evidence that such misconduct involves high-level officials or amounts to "nefarious or extreme government wrongdoing." *Neighborhood Assistance Corp.*, 19 F. Supp. 3d at 14.

Moreover, Mr. Marin's stated public interest is not the only one in play. The public also "has a strong interest in preserving the confidentiality of internal investigations as necessary to encourage forthcoming interviews with witnesses and ensure the integrity of the fact gathering process, both of which considerations may depend in part on assurances to those participating that their names and other identifying information will be kept confidential." *Mikhashov*, 2024 WL 4332601, at *18. "This strong countervailing public interest dovetails with the significant privacy interests" held by individuals that might be implicated in the AR 15-6 records and which "warrant withholding under Exemption 6." *Id.* Accordingly, Mr. Marin has not demonstrated that disclosure of the records he requests is "likely to advance" a "significant" public interest that warrants invasion of those privacy interests. *See Nat'l Archives*, 541 U.S. at 172.

### 4.  Prior Disclosure

The three-step analysis above supports the Secretary's *Glomar* responses. But Mr. Marin asserts that the requested records should still be subject to disclosure because they have already been "officially acknowledged." MSJ Opp'n at 23–24. The Court disagrees.

"[W]hen information has been 'officially acknowledged', its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). "A plaintiff urging official acknowledgment must point to specific information in the public domain that appears to duplicate that being withheld.'" *Knight First Amend. Inst. at*

12

*Columbia Univ. v. CIA*, 11 F.4th 810, 813 (D.C. Cir. 2021) (cleaned up). "The prior disclosure must match the information requested, must be as specific, and must have been 'made public through an official and documented disclosure.'" *Id.* (quoting *Fitzgibbon*, 911 F.2d at 765). "To constitute official acknowledgment in the *Glomar* context, the prior disclosure must confirm the existence or nonexistence of records responsive to the FOIA request." *Id.*

Here, Mr. Marin argues that the records at issue were "officially acknowledged" in disclosures during his court martial proceeding. MSJ Opp'n at 19; Pl.'s Surreply at 2–6. Specifically, he alleges that "the government provided [him] numerous sworn statements from various members of 'Apache Troop' specifically referencing an AR 15-6 investigation of 'Apache Troop' while it was deployed to Iraq.'" MSJ Opp'n at 24. But the Army's disclosure of those documents in discovery does not amount to a public or official acknowledgment of the existence or nonexistence of the records Mr. Marin has requested as required "to overcome the [Secretary's] *Glomar* response." *James Madison Project v. Dep't of Just.*, 302 F. Supp. 3d 12, 21 (D.D.C. 2018).

Had the documents been introduced in open court, they might constitute an official acknowledgment of at least some portion of the requested records. *See Knight First Amend. Inst.*, 11 F.4th at 817 (where agency attorney "introduces certain records as evidence in court, other [agency] components may not claim FOIA exemptions as to those records"). But Mr. Marin has not established that this happened. And the Certified Record of Mr. Marin's trial confirms that none of the documents were either marked as exhibits or introduced into evidence. *See*, Def. Ex. A., ECF No. 22-1.

13

### 5. Segregability

Finally, Mr. Marin argues that even if some of the requested records are properly exempted from FOIA disclosure, the Secretary must still review the records and "release any reasonably segregable portions." Pl.'s Surreply at 16. Here, too, Mr. Marin's arguments come up short.

Mr. Marin is right that FOIA ordinarily requires an agency to "search for any documents responsive to [a] request" and "disclose all reasonably segregable, nonexempt portions of the requested record(s)." *PETA*, 745 F.3d at 540. When a *Glomar* response is justified, however, "the agency need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *Id.*; *see also Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) ("When the Agency's position is that it can neither confirm nor deny the existence of the requested records, there are no relevant documents for the court to examine other than the affidavits which explain the Agency's refusal.").

Here, the logic of that rule makes good sense. As it relates to E.L., the *only* records Mr. Marin has requested are "administrative or disciplinary records" that relate to "non-judicial punishment" and "administrative discharge" for cocaine use. FOIA Req. at 1. There is no way to acknowledge the existence of such records without invading E.L.'s privacy. Nor is there any way to reasonably segregate some portion of those records for release.

The same is true of the records related to the AR 15-6 investigation. Mr. Marin's request is not a broad one. He is not, for example, seeking information about how the Army generally conducts AR 15-6 investigations. Rather, Mr. Marin wants a "copy" of records from a single investigation that relates to four specific individuals. Enclosure 1. And Mr. Marin believes that the investigation links those individuals and others to misconduct or other disciplinary actions. *Id.* Under those circumstances, "merely acknowledging" that the Army has such records "would tend

to associate" the identified individuals with misconduct and potential criminal activity, "thus impinging on their privacy." *See Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1178 (D.C. Cir. 2011). And the Army cannot reasonably sort through, segregate, and disclose records that it cannot acknowledge.

* * *

For all the above reasons, the Court concludes that the Secretary has adequately justified the *Glomar* responses issued to Mr. Marin with affidavits that contain "reasonable specificity of detail" and are not "called into question by contradictory evidence in the record." *PETA*, 745 F.3d at 540. Accordingly, the Secretary is entitled to summary judgment.

### B. Motion to Amend

In what is perhaps a last-ditch effort to keep this suit alive, Mr. Marin moves to amend his Complaint pursuant to Federal Rule of Civil Procedure 15. The Court denies that motion.

Federal Rule of Civil Procedure 15 permits a party to "amend its pleading once as a matter of course [within] . . . 21 days after serving it, or . . . 21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1). Outside of that time, a party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "[I]t is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive.'" *Joel v. Howard Univ.*, No. 24-cv-1655, 2025 WL 358769, at *1 (D.D.C. Jan. 31, 2025) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). But a court may deny such leave where one of those factors is present, where the delay in seeking amendment may result in prejudice to the opposing party, or where amendment would be futile. *Id.*

Here, Mr. Marin seeks to add a FOIA claim related to a records request that he made to the Defense Health Agency in April 2024 regarding treatment for an injury he suffered to his bicep. The Secretary does not consent to this amendment and understandably so. Mr. Marin's proposed amendment comes a year after he initially filed this lawsuit. It involves allegations regarding an entirely different FOIA request submitted to an entirely different defendant. And it was made during summary judgment briefing aimed at fully resolving his original claims. Under the circumstances, permitting Mr. Marin to amend, and effectively resetting the clock on this litigation, would be prejudicial to the Secretary and would not, as Mr. Marin suggests, "serve the purpose of convenience and judicial economy." Mot. Amend at 1.

## CONCLUSION

For the foregoing reasons, the Court grants the Defendant's Motion for Summary Judgment, ECF No. 17, and denies Mr. Marin's Motion to Amend his Complaint, ECF No. 21.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   November 12, 2025